Orlando ROLDAN, Petitioner–Appellant,

v.

James RACETTE, Superintendent, Adirondack Correctional Facility, and U.S. Immigration & Naturalization Service, Respondents–Appellees.

No. 1684, Docket 91–2544.

United States Court of Appeals, Second Circuit.

Argued June 11, 1992.

Decided Jan. 22, 1993.

Randolph Z. Volkell, North Merrick, NY, for petitioner-appellant.

William C. Pericak, Asst. U.S. Atty. for the N.D. of N.Y., Albany, NY (Gary L. Sharpe, U.S. Atty. for the N.D. of N.Y., Albany, NY, of counsel), for respondent-appellee U.S. I.N.S.

Robert Abrams, Atty. Gen. of the State of N.Y. John McConnell, Asst. Atty. Gen. of the State of NY, Albany, NY, for respondent-appellee James Racette, Superintendent, Adirondack Correctional Facility.

Before: CARDAMONE, WINTER, and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

Petitioner-appellant Orlando Roldan appeals from a judgment entered October 29, 1991 in the United States District Court for the Northern District of New York, Howard G. Munson, *Judge,* that dismissed Roldan's application for a writ of habeas corpus. The district court, adopting a report-recommendation of Ralph W. Smith, Jr., *Magistrate Judge,* entered September 10, 1991, ruled that Roldan was not "in custody" within the meaning of 28 U.S.C. § 2241(c)(3) (1988), thus precluding habeas corpus jurisdiction.

We dismiss the appeal for lack of subject matter jurisdiction.

## Background

Roldan, a native and citizen of Colombia, entered the United States in 1981 without inspection by any representative of the United States Immigration and Naturalization Service ("INS"). His petition asserts that on September 4, 1987, he was convicted in the Dutchess County Court in the State of New York of assault in the first degree and sentenced to an indeterminate prison term of two to six years.[1] In August 1988, Roldan was released from state prison on parole and placed in the custody of the INS.

Following a deportation hearing, Roldan was deported from the United States to Colombia on August 12, 1988. According to Roldan, the INS failed to notify him at that hearing of his legal rights, including the possibility of defending against the deportation based upon his 1983 marriage to an American citizen, or of the fact that subsequent reentry into the United States would constitute a violation of his parole.

In October 1989, Roldan reentered the United States without inspection. He was subsequently arrested for driving while intoxicated ("DWI"). The DWI offense and reentry into the United States were considered violations of his parole. Accordingly, Roldan's parole was revoked and he was recommitted to state prison to serve an additional twenty-four months of his state prison sentence.

On June 20, 1990, while Roldan was incarcerated, the INS began a proceeding to deport him by issuance of an order to show cause and warrant of arrest. The grounds for the proposed deportation were his reentry into the United States without inspection and his 1987 state conviction. In support of that proceeding, the INS lodged a detainer against Roldan with the state prison officials so that Roldan could be released into INS custody at the expiration of his state sentence.

On March 22, 1991, Roldan filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1988). The named respondents were the INS and James Racette, superintendent of the Adirondack Correctional Facility, where Roldan was then imprisoned. The petition did not challenge the underlying state conviction, but rather "the miscarriage of justice and the violation of [Roldan's] rights which occurred at the 1988 INS proceedings against [him]."

The matter was referred to Magistrate Judge Smith. Thereafter, respondents moved to dismiss the petition for lack of subject matter jurisdiction. The INS contended that although Roldan was challenging the procedures employed in his earlier deportation hearing, he was not in the custody of the INS because the mere filing of a detainer did not satisfy the custody requirement for habeas corpus jurisdiction. The state respondent argued that because Roldan was in custody pursuant to a determination that he violated his parole and did not challenge either that determination or the underlying state conviction, there was no claim that his imprisonment met the requirements of federal law for the provision of habeas relief to a state prisoner.

Addressing these motions, the magistrate judge entered a report-recommendation on September 10, 1991 that proposed dismissal of the petition for failure to satis-

---

**1.** While Roldan and the State of New York assert that Roldan was convicted of assault, the INS claims that Roldan was convicted of a drug offense. The exact nature of the offense is not material to the issues presented by this appeal.

fy the "in custody" requirement of 28 U.S.C. § 2241(c)(3). The magistrate found that Roldan's incarceration in state prison was not determined by the allegedly defective 1988 deportation hearing, and that the INS detainer did not "place [Roldan] within INS custody for purposes of this action."

The report-recommendation was served upon the parties by certified mail. It included the following notice:

> Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to lodge written objections to the foregoing report.... FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 72, 6(a), 6(e).

Roldan acknowledged his receipt of the magistrate's report on September 9, 1991. No objections were filed. On October 29, 1991, Judge Munson entered an order that approved the report-recommendation and dismissed Roldan's petition. A corresponding judgment was entered on that date. Roldan filed a notice of appeal on November 12, 1991, and the district court issued a certificate of probable cause on December 9, 1991.

In December 1991, Roldan was released from state custody and was taken into custody by the INS. In January 1992, Roldan was deported to Colombia. The INS subsequently filed a motion, joined by Racette, which sought dismissal of the appeal pursuant to *Small v. Secretary of Health & Human Services*, 892 F.2d 15 (2d Cir.1989) (per curiam), for Roldan's failure to object to the report-recommendation of the magistrate judge.

## Discussion

Roldan's habeas petition named as respondents both the superintendent of the New York correctional facility where he was incarcerated and the INS, which had lodged a detainer regarding Roldan with the state prison authorities prior to Roldan's application for habeas relief. We

accordingly address Roldan's challenges to (1) his state custody, and (2) the INS detainer.

### A. *Roldan's State Custody.*

■ The magistrate judge's report-recommendation regarded Roldan as effectively seeking relief only "against the INS even though he is not in INS custody." The magistrate judge was certainly justified in that view.

Roldan's petition "challenge[d] proceedings of the INS, Buffalo office, with respect to a deportation hearing," and further contended that his state confinement was "illegal in that it was predicated upon the miscarriage of justice and the violation of my rights that occurred at the 1988 INS proceedings against me." There was no claim that there was any infirmity in the state proceedings that led to Roldan's initial conviction for assault.

Further, we cannot conclude that his subsequent imprisonment as a parole violator by New York State constituted "custody in violation of the Constitution or laws or treaties of the United States" within the meaning of 28 U.S.C. §§ 2241(c)(3) and 2254(a) simply because the INS allegedly failed to advise him at his 1988 deportation proceeding that illegal reentry would constitute a violation of his state parole. In any event, Roldan could hardly contend that his DWI conviction, an additional basis for his parole revocation, was attributable to the 1988 deportation proceeding.

We conclude that Roldan presented no significant challenge to his state custody. Considerations of mootness regarding this issue accordingly need not be addressed.

### B. *The INS Detainer.*

■ Construing Roldan's *pro se* habeas petition liberally, *see Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir.1983), it is possible to read it as challenging the INS detainer. The magistrate judge took this view of Roldan's petition, but concluded that the filing of the INS detainer did not place Roldan within INS custody, with the

result that Roldan did not satisfy the "in custody" predicate of §§ 2241(c)(3) and 2254 for habeas relief against the INS. In so ruling, the magistrate judge relied upon *Orozco v. INS*, 911 F.2d 539, 541 (11th Cir.1990) (per curiam), and *Campillo v. Sullivan*, 853 F.2d 593, 595 (8th Cir.1988), *cert. denied*, 490 U.S. 1082, 109 S.Ct. 2105, 104 L.Ed.2d 666 (1989).

■ These cases express the clear majority view that an INS detainer constitutes (1) a notice that future INS custody will be sought at the conclusion of a prisoner's pending confinement by another jurisdiction, and (2) a request for prior notice regarding the termination of that confinement, and thus does not result in present confinement by the INS. *See Orozco*, 911 F.2d at 540–41 (following *Campillo*); *Campillo*, 853 F.2d at 595 (INS detainer "merely notifies prison officials that a decision regarding [a prisoner's] deportation will be made by the INS at some future date"); *see also Prieto v. Gluch*, 913 F.2d 1159, 1162–64 (6th Cir.1990) (following *Campillo*), *cert. denied*, — U.S. —, 111 S.Ct. 976, 112 L.Ed.2d 1061 (1991); *Lepez–Mejia v. INS*, 798 F.Supp. 625, 627 (C.D.Cal.1992) (detainer "merely *notifies* the prison that the INS has some interest in a particular inmate, and asks prison officials to advise the INS when the inmate is about to be released"); *Severino v. Thornburgh*, 778 F.Supp. 5, 6 (S.D.N.Y.1991) ("mere filing of an INS detainer notice fails to establish the requisite custody under the habeas corpus statute"); *Paulino v. Connery*, 766 F.Supp. 209, 210–11 (S.D.N.Y. 1991) (INS detainer did not result in INS custody); *Soler v. INS*, 749 F.Supp. 1011, 1012 (D.Ariz.1990) (same); *Garcia v. INS*, 733 F.Supp. 1554, 1555 (M.D.Pa.1990) (same); *Cabezas v. Scott*, 717 F.Supp. 696, 697 (D.Ariz.1989) (same); *D'Ambrosio v. INS*, 710 F.Supp. 269, 270 (N.D.Cal.1989) (same); *Fernandez–Collado v. INS*, 644 F.Supp. 741, 743–44 (D.Conn.1986) (same), *aff'd mem.*, 857 F.2d 1461 (2d Cir.1987).

Two older cases, however, state that the filing of an INS detainer results in "technical custody" of the affected prisoner by the INS. *See Chung Young Chew v. Boyd*, 309 F.2d 857, 865 (9th Cir.1962) ("Where ... a warrant is obtained by the [INS] while the person named is in a penal institution, and on the basis thereof a detainer is lodged with that institution, the [INS] gains immediate technical custody. This is retained until the individual is released from the institution at which time actual custody is obtained."); *Slavik v. Miller*, 89 F.Supp. 575, 576 (W.D.Pa.) ("The petitioner unquestionably is in the technical custody of the immigration authorities since a detainer has been lodged for the body of the petitioner at the time that the fulfillment of the state sentence has expired."), *aff'd on another ground*, 184 F.2d 575 (3d Cir.1950) (per curiam), *cert. denied*, 340 U.S. 955, 71 S.Ct. 566, 95 L.Ed. 688 (1951); *cf. Campillo*, 853 F.2d at 596 (distinguishing *Boyd* and *Slavik* on the basis that in those cases, the "courts acted to ensure that an already existing deportation order would be subject to judicial review"). *But see Mohammed v. Sullivan*, 866 F.2d 258, 260 (8th Cir. 1989) ("the filing of an INS detainer with prison officials does not constitute the requisite 'technical custody' for purposes of habeas jurisdiction"); *Fernandez–Collado*, 644 F.Supp. at 743 (court "not persuaded" by rationale of *Boyd* and *Slavik*).

In *Vargas v. Swan*, 854 F.2d 1028 (7th Cir.1988), the Seventh Circuit remanded for a determination whether an INS detainer would be treated as a simple notice of INS interest in a prisoner, or as a request "to hold an inmate at the end of his sentence until the INS can take him into custody," *id.* at 1033, in which event INS custody would be established. In *Prieto*, however, the Sixth Circuit rejected the *Vargas* rationale, concluding that an INS detainer notice "does not claim the right to take a petitioner into custody in the future nor does it ask the warden to hold a petitioner for that purpose." *Prieto*, 913 F.2d at 1164. In *Guti v. INS*, 908 F.2d 495, 496 (9th Cir.1990), the Ninth Circuit ruled, citing *Vargas*, that an assertion of INS custody resulting from an INS detainer was not a frivolous contention within the meaning of 28 U.S.C. § 1915(d) (1988). *See also Payo v. Hayes*, 754 F.Supp. 164, 166 (N.D.Cal.1991) (same).

The record on appeal in this case does not include the INS detainer regarding Roldan that was filed with the New York authorities. We are not faced, however, with a choice between affirming on the basis that INS detainers serve only a notice function, following the majority view, or remanding, in accord with *Vargas*, for a particularized determination whether the detainer in this case constituted a request that Roldan be held for the benefit of the INS at the conclusion of his state prison term. Events occurring subsequent to the magistrate judge's report-recommendation preclude our consideration of this issue.

■ In the first place, the rule in this circuit is that "failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision." *Small*, 892 F.2d at 16 (collecting cases). In *Small*, we clarified the application of this rule to *pro se* litigants, holding that their failure to object to a magistrate's report and recommendation would operate as a waiver of appellate review only if the document "explicitly states that failure to object to the report within ten (10) days will preclude appellate review and specifically cites 28 U.S.C. § 636(b)(1) and rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure." *Small*, 892 F.2d at 16; *see also Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir.1992) (*pro se* litigant barred from review of magistrate's proposed ruling despite immaterial variation from notice language required by *Small*), *cert. denied*, —— U.S. ——, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992). The report-recommendation provided to Roldan plainly satisfies the *Small* requirements, and additionally referred to the *Small* decision. Notwithstanding this notification, Roldan filed no objections.

On this record, accordingly, we would have a clear basis for affirmance without considering Roldan's contention that the INS detainer resulted in habeas corpus "custody." Further, although the *Small* rule is a nonjurisdictional waiver provision whose violation we may excuse in the interests of justice, *see Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); *Frank*, 968 F.2d at 300, we perceive no basis in this record for such a departure.

■ This appeal, furthermore, encounters an even more fundamental difficulty. 8 U.S.C. § 1105a(c) (1988) provides in pertinent part that: "An order of deportation ... shall not be reviewed by any court if the alien ... has departed from the United States after the issuance of the order." The INS contends, in its brief on appeal, that "[o]nce Roldan was deported in 1988, 8 U.S.C. § 1105a(c) operated to divest the courts of jurisdiction to entertain any challenge to the deportation order." It seems to us that the deportation order presently under review is the one that resulted in Roldan's 1992 deportation, with the result that his 1992, rather than 1988, deportation is the proper basis for the invocation of § 1105a(c) on this appeal.

Notwithstanding the unambiguous language of the statute, there is some conflict among the circuits as to the meaning of the provision of § 1105a(c) at issue in this case. The seminal case is *Mendez v. INS*, 563 F.2d 956 (9th Cir.1977), in which the Ninth Circuit expressed "the opinion that 'departure' in the context of 8 U.S.C. § 1105a cannot mean 'departure in contravention of procedural due process.' We hold that 'departure' means 'legally executed' departure when effected by the government." *Mendez*, 563 F.2d at 958 (citing *Delgadillo v. Carmichael*, 332 U.S. 388, 391, 68 S.Ct. 10, 12, 92 L.Ed. 17 (1947)). The INS was ordered to admit Mendez into the United States with the same status he had prior to deportation because its failure to notify Mendez' counsel prior to Mendez' deportation violated a pertinent statute and regulation. *Id.* at 959.

Subsequent Ninth Circuit rulings have followed *Mendez. See, e.g., Zepeda–Melendez v. INS*, 741 F.2d 285, 289 (9th Cir.1984) (basing jurisdiction upon failure of INS to notify alien's counsel of deportation); *Thorsteinsson v. INS*, 724 F.2d 1365, 1367 (9th Cir.) (examining record of deportation hearing upon claim of ineffective assistance of counsel), *cert. denied*, 467 U.S. 1205, 104 S.Ct. 2386, 81 L.Ed.2d 345 (1984); *Estrada–Rosales v. INS*, 645 F.2d 819,

820–21 (9th Cir.1981) (allowing attack upon deportation order based on conviction set aside after alien's deportation). In addition, the Sixth Circuit endorsed *Mendez* in *Juarez v. INS*, 732 F.2d 58, 59–60 (6th Cir.1984), and the Third Circuit cited *Mendez* favorably in *Newton v. INS*, 622 F.2d 1193, 1195 (3d Cir.1980), although concluding that the *Mendez* claim was not supported by the record in that case. *Id.*

Other circuits, however, have responded less hospitably to the *Mendez* gloss on § 1105a(c). In *Umanzor v. Lambert*, 782 F.2d 1299 (5th Cir.1986), the Fifth Circuit expressed "serious reservations" about *Mendez, id.* at 1303, describing it as "a sinkhole that has swallowed the rule of § 1105a(c)" in the Ninth Circuit, 782 F.2d at 1303 n. 5, but concluded that there was no basis in the *Umanzor* record for the application of the *Mendez* rule in any event. *Id.* at 1303. This criticism was reiterated in *Ortez v. Chandler*, 845 F.2d 573, 575 (5th Cir.1988), another case in which *Mendez* considerations were not dispositive. The Fifth Circuit squarely rejected *Mendez* in *Quezada v. INS*, 898 F.2d 474, 476 (5th Cir.1990) (citing *Asai v. Castillo*, 593 F.2d 1222 (D.C.Cir.1978) (per curiam)), and declined to exercise jurisdiction in reliance upon § 1105a(c). *Id.* at 477.

*Asai* granted an unopposed motion to dismiss an appeal by deported aliens, citing § 1105a(c). 593 F.2d at 1224 & n. 1. More recently, the District of Columbia Circuit "venture[d] no opinion upon the validity of [the *Mendez*] exception," *Joehar v. INS*, 957 F.2d 887, 890 (D.C.Cir.1992), which was inapplicable to the voluntary departure in that case, but indicated an attitude of hostility to it, including quotation of the *Umanzor* "sinkhole" appraisal. *Joehar*, 957 F.2d at 889 (quoting *Umanzor*, 782 F.2d at 1303 n. 5). The Tenth Circuit has ruled that the command of § 1105a(c) is "unequivocal" and that a petitioner's deportation "eliminates our jurisdiction to review his deportation order," *Saadi v. INS*, 912 F.2d 428, 428 (10th Cir.1990) (per curiam) (citing *Quezada*, 898 F.2d at 476–77; *Umanzor*, 782 F.2d at 1303; *Asai*, 593 F.2d at 1223–24), but without mentioning *Mendez*. The Seventh Circuit "express[ed] no opinion" on the Ninth Circuit rule in *Terrado v. Moyer*, 820 F.2d 920, 922 (7th Cir. 1987), a case in which there was no factual basis for application of the *Mendez* exception. *Id.*

We agree with the courts that have criticized *Mendez*. The pertinent language of § 1105a(c) constitutes a clear jurisdictional bar, and admits of no exceptions. *See Connecticut Nat'l Bank v. Germain*, —— U.S. ——, ——, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) ("courts must presume that a legislature says in a statute what it means and means in a statute what it says there") (collecting cases).

The critical flaw in the *Mendez* rule is especially evident in *Thorsteinsson*. That case characterized the jurisdictional bar of § 1105a(c) as a "general rule," 724 F.2d at 1367, and allowed an allegation of ineffective assistance of counsel to open the door to at least a partial review of the petitioner's deportation hearing. *Id.* Although the petitioner's claim was ultimately found to be without merit, *id.*, the decision nonetheless establishes that an alien need only allege a defective deportation hearing to obtain review of that hearing. To allow the clear intent of Congress expressed in § 1105a(c)—that "[a]n order of deportation . . . shall not be reviewed" once the alien has departed—to be so easily circumvented is to render the statute virtually without effect, clearly validating *Umanzor*'s "sinkhole" assessment. *Umanzor*, 782 F.2d at 1303 n. 5; *see also Marsano v. Laird*, 412 F.2d 65, 70 (2d Cir.1969) ("an interpretation which emasculates a provision of a statute is not to be preferred").

We also agree with *Umanzor* that Congress had ample constitutional authority to enact the jurisdictional limitation at issue in this case. *See Umanzor*, 782 F.2d at 1304 ("Congress is constitutionally empowered to curtail the habeas jurisdiction of the lower federal courts if it so chooses"). As the Supreme Court recently reiterated:

Article I, § 8, cl. 9 . . . authorizes Congress "[t]o constitute Tribunals inferior to the supreme Court" and Article III, § 1, states that "[t]he judicial Power of

the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." The Court's cases state the rule that "if inferior federal courts were created, [Congress was not] required to invest them with all the jurisdiction it was authorized to bestow under Art. III." *Palmore v. United States,* 411 U.S. 389, 401, 93 S.Ct. 1670, 1678, 36 L.Ed.2d 342 (1973).

This position has held constant since at least 1845, when the Court stated that "the judicial power of the United States ... is (except in enumerated instances, applicable exclusively to this court) dependent for its distribution and organization, and for the modes of its exercise, entirely upon the action of Congress, who possess the sole power of creating the tribunals (inferior to the Supreme Court) ... and of investing them with jurisdiction either limited, concurrent, or exclusive, and of withholding jurisdiction from them in the exact degrees and character which to Congress may seem proper for the public good." *Cary v. Curtis,* [44 U.S.] 3 How. 236, 245, 11 L.Ed. 576. See *Sheldon v. Sill,* [49 U.S.] 8 How. 441, 12 L.Ed. 1147 (1850); *Plaquemines Tropical Fruit Co. v. Henderson,* 170 U.S. 511, 18 S.Ct. 685, 42 L.Ed. 1126 (1898); *Kline v. Burke Constr. Co.,* 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226 (1922); *Lockerty v. Phillips,* 319 U.S. 182, 63 S.Ct. 1019, 87 L.Ed. 1339 (1943).

*Ankenbrandt v. Richards,* —— U.S. ——, ——, 112 S.Ct. 2206, 2212, 119 L.Ed.2d 468 (1992).

### Conclusion

The appeal is dismissed for want of subject matter jurisdiction.