**UNITED STATES of America,**

v.

**Elijah GRANDERSON, Defendant**

**No. 01–CR–6046 CJS.**

United States District Court,
W.D. New York.

Dec. 12, 2001.

Bret Puscheck, U.S. Attorneys office, Rochester, NY, for the United States of America.

Robert G. Smith, Federal Public Defender, Rochester, NY, for the Defendant.

DECISION and ORDER

SIRAGUSA, District Judge.

Indictment Number 01–CR–6046 was filed against the defendant on April 26, 2001, charging him with two counts: the first, Possession of a Weapon in Furtherance of a Drug Trafficking Crime, in violation of Title 18 of the United States Code § 924(c); and the second, Possession of a Controlled Substance with Intent to Distribute and to Distribute it, in violation of Title 21 of the United States Code § 841(a)(1). The defendant, by Notice of Motion dated July 6, 2001, moved for various forms of relief including suppression of tangible evidence, specifically, four hundred eighty dollars, ($480.00) in United States currency, fifty-two (52) "dime" bags of suspected marihuana, nine (9) rounds of .380 caliber ammunition, one (1) magazine to a .380 caliber Colt Lorcin firearm, one

(1) black nylon holster, and one (1) Lorcin .380 caliber handgun. The defendant contends that the United States currency, which was obtained from his person, was illegally seized, since the police lacked both probable cause to believe that he had committed a crime and justification for a *Terry* stop and search. As to the remaining items, the defense contends that they were illegally seized from the premises at which the defendant was located, since the police lacked both a search warrant and exigent circumstances.

By response dated July 19, 2001, the Government opposed suppression. The Government maintains that the seizure of the United States currency from the defendant's person was proper as it was a search incident to a lawful arrest, and as to those items seized from the premises, that the defendant, in the first instance, lacks standing to object to their seizure, and apart from the standing issue, that exigent circumstances justified the warrantless search.

A pre-trial suppression hearing was held before this Court on October 29, 2001 and November 7, 2001. The Court, having considered the evidence presented at the hearing including the testimony of the sole Government witness called, Officer Paul Lucci, and the sole defense witness called, the defendant himself, as well as the exhibits received, and the Court having made determinations on issues of credibility, now makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

On January 12, 2001, Officer Paul Lucci of the Rochester Police Department, was assigned to Clinton Section, third platoon, Patrol Division. Officer Lucci had been employed as a police officer with the City of Rochester since 1997, and before that, had worked for approximately a year and a half as a police officer in the City of Rome.

Prior to January 12, 2001, Officer Lucci had been involved in approximately a dozen or so arrests involving guns and drugs. Moreover, he had been involved in hundreds of arrests involving either narcotics or narcotics trafficking. Further, prior to January 12, 2001, he had the opportunity to debrief subjects he arrested for drug trafficking, as well as the opportunity to speak with confidential informants with regard to drug trafficking. As of January 12, 2001, based on his experience, Officer Lucci was aware of the way drugs were packaged and distributed at street level. Also, as of January 12, 200, Officer Lucci was familiar with "gatehouses," fortified locations from which drugs are sold.

On January 12, 2001, the defendant went to 768 Avenue D in the city of Rochester, arriving at about 11:00 A.M. Located at 768 Avenue D was a house divided into two apartments, one in the front and one in the back. The defendant was familiar with the location because his brother-in-law, Clifford Lassiter, lived in the front apartment. The defendant was also acquainted with an individual by the name of James Thomas, known as Monroe, whom he believed to live in the rear apartment at 768 Avenue D. On one occasion, the defendant had observed Monroe pay an RG & E man in regard to the rear apartment and get a receipt in return. He had also seen Monroe come and go from the rear apartment and observed that Monroe had a key for that location. The rear apartment at 768 Avenue was small, about thirty square feet, with a kitchen, living room, dining area, bedroom, and bathroom.

On January 11, 2001, Monroe asked the defendant to come to the rear apartment at 768 Avenue the next day, January 12, to sell marihuana for him from that location. Monroe told the defendant that when he arrived, he would receive the key for the rear apartment from an individual named

Tim. The defendant agreed and, as previously indicated, arrived at about 11:00 a.m., and upon his arrival did receive the key from Tim. The defendant was only scheduled to stay until 4:30 p.m., at which time Monroe was supposed to return from court. As of January 12, 2001, the windows of the rear apartment at 768 Avenue D were boarded up with an opening in the kitchen window from which marihuana could be sold. While in the rear apartment at 768 Avenue D on January 12, 2001, the defendant in fact sold drugs both through the opening in the kitchen window and through the front door. The defendant stored the money he received for selling the marihuana in his boot.

At about 5:00 p.m. on January 12, 2001, Officer Lucci was on duty and driving a patrol vehicle in the vicinity of 768 Avenue D. The temperature on that day was approximately in the 30's. Officer Lucci had knowledge of drug activity in that location, based on his personal involvement in drug and gun arrests in the area, his knowledge of search warrants executed in the area, and intelligence reports relating to the area.

While near the intersection of Avenue D and Bowman Street, Officer Lucci observed heavy pedestrian traffic in the area of 768 Avenue D. Officer Lucci then parked his patrol vehicle, and established a point of surveillance on a cut, which is a well-worn path, located in the yard of a vacant dwelling one house to the east of 768 Avenue D. Officer Lucci knew that the dwelling where he established his surveillance of 768 Avenue D was vacant, because it was boarded up, that is, every window and door had a plywood board over it; additionally, there was snow on the ground, but there were no signs of footprints around the doors of the dwelling, nor were there any other signs that people were living in the premises. Officer Lucci was surprised by an individual walking on

the driveway on the east side of 768 Avenue D back to the rear apartment. To avoid being spotted, Officer Lucci took a position behind an abandoned car located in the yard where he was positioned.

From his vantage point, Officer Lucci was able to observe a person go up to a window of the rear apartment at 768 Avenue D. He saw that, although the window was covered by a board, it has a slot in it. From his position in the adjacent yard, Officer Lucci was approximately fifteen feet from this window with the slot. While it was approaching dusk, there was still daylight, and Officer Lucci had an unobstructed view of the activity that was going on at the rear apartment of 768 Avenue D. Officer Lucci observed a black male, approximately 30 years old, walk down the driveway to the rear apartment at 768 Avenue D, saw him knock on the window, and heard this unidentified black male say, "okay, side door." He then observed the black male walk to the east side, knock on the door, and saw the door open. The door was closer to Officer Lucci than was the window. After Officer Lucci observed the unidentified black male knock, he saw the defendant open the door, and observed the defendant stand in the doorway holding a brown paper bag. Officer Lucci saw that the defendant and the unidentified black male were conversing, but could not overhear what was being said. However, Officer Lucci did see the defendant remove a clear, small, Ziplock baggie from the brown paper bag.

At the same time that he observed the Ziplock baggie, Officer Lucci noticed the handle of a handgun in the defendant's waistband. More specifically, Officer Lucci observed the black grip and some shiny portions. Officer Lucci was familiar with firearms not only because of his training and experience with the police department, but additionally, because of his experience

as a New York State Firearms Instructor, and also because of his seven years of military experience. At the point he observed the Ziplock baggie and handle of the gun, Officer Lucci was about fifteen feet from the defendant. Officer Lucci then saw the unidentified black male give the defendant an amount of money. Based on his experience and knowledge of the area, Officer Lucci reached the opinions that the rear apartment at 768 Avenue D was a "gatehouse," and that an illegal narcotics transaction had just occurred.

The unidentified black male proceeded to walk back down the driveway toward the street, and as that occurred, another individual walked up the driveway toward the rear of the apartment at 768 Avenue D. The second individual approached much like the first, initially walking past the doorway and knocking on the rear window. The defendant again came to the door. However, this time he no longer had the brown paper bag, but rather was holding Ziplock baggies in his hand. Again, Officer Lucci could clearly see the handle of a handgun in the defendant's waistband.

At this point, Officer Lucci decided to arrest the defendant. However, as he approached the door of the rear apartment at 768 Avenue D, the defendant slammed it shut. Within five or six seconds of the door being slammed shut, Officer Lucci kicked out the bottom panel of the door. He had his flashlight out and had his gun drawn. He was able to look into the kitchen area, which was approximately twelve square feet, and shouted to the defendant to stop hiding. Officer Lucci indicated that he was coming in and directed the defendant to show his hands and show the gun. Officer Lucci proceeded to enter into the apartment and when he did, he observed the gun that he had previously seen in the defendant's waistband on a shelf immediately adjacent to the door, as well

as a holster. Officer Lucci took possession of the gun and holster and called for the defendant to come out. The defendant responded by coming out of the bedroom, which was located off the living room. When the defendant came out he said, "I got nothing. I'm in here alone, I don't have anything." Officer Lucci responded by placing handcuffs on the defendant, searching him, and directing him to sit down on the chair in the kitchen. Officer Lucci then called for an additional unit. Pursuant to his search of the defendant, Officer Lucci took possession of a sum of U.S. currency which he discovered in the defendant's boot.

With the defendant handcuffed and sitting on the chair in the kitchen, Officer Lucci proceeded to check the apartment. He noted that it was sparsely furnished, with just a table and a couple of chairs in the kitchen and a couch in the living room. He walked into the bedroom and noticed that there was no bedroom set, but only a mattress. These observations were consistent with his conclusion that the apartment was a "gatehouse." Officer Lucci did observe clothes in the bedroom, and he kicked them to make sure no one was hiding underneath. He also saw that the bedroom closet had no door and that a person could hide in the closet. Additionally, he observed almost directly in front of the doorway of closet, the brown paper bag from which he had earlier observed the defendant take the Ziplock baggie of suspected drugs.

## CONCLUSIONS OF LAW

### A. Standing

██ It is well settled that a defendant seeking to have evidence suppressed based upon an alleged Fourth Amendment violation must have a reasonable expectation of privacy in the location or items searched. *Rakas v. Illinois*, 439 U.S. 128, 143, 99

S.Ct. 421, 58 L.Ed.2d 387 (1978). The expectation has both subjective and objective components. In this regard, the Supreme Court has developed a two-part standing test useful to determine whether a particular defendant's personal expectations are indeed reasonable within the meaning of the Fourth Amendment. Under this test, a defendant must demonstrate 1) that he or she sought to preserve the location or item as private, and 2) that his or her expectation is one that society is prepared to accept as reasonable. *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979); *United States v. Osorio,* 949 F.2d 38, 40 (2d Cir.1991). Moreover, a defendant has the burden of establishing standing by a preponderance of evidence. *Jones v. United States,* 362 U.S. 257, 261, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), *United States v. Osorio,* 949 F.2d at 40.

Two issues relating to standing, which need to be addressed, have been raised by the defendant in this case. The first concerns the defendant's argument that Officer Lucci, by positioning himself in the yard adjacent to 768 Avenue D and hiding behind the abandoned car, acted unlawfully and violated the defendant's expectation of privacy, because the defendant could not have reasonably anticipated being observed in the doorway of the rear apartment of 768 Avenue D by a trespasser who occupied such vantage point. The Court rejects this argument. It is true that an unenhanced viewing may implicate the Fourth Amendment where the viewer is a trespasser improperly occupying his vantage point. *United States v. Agapito,* 620 F.2d 324, 331 (2d Cir.1980); *United States v. Taborda,* 635 F.2d 131, 138 (2d Cir.1980). However, such is not the case here. As an initial matter, there is no

evidence that Officer Lucci was trespassing at all, let alone trespassing on the premises in question, 768 Avenue D, where the defendant maintains he had an expectation of privacy.[1] However, beyond this, the Second Circuit made clear in *United States v. Fields,* 113 F.3d 313, 322 (2d Cir.1997), that even the fact that the police may be trespassing in the yard on which a residence is located, does not automatically render unlawful any observations made from that vantage point. Although society generally respects a person's expectations of privacy in a dwelling, what a person chooses voluntarily to expose to public view thereby loses its Fourth Amendment protection. *California v. Ciraolo,* 476 U.S. 207, 213, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986); *Florida v. Riley,* 488 U.S. 445, 449, 109 S.Ct. 693, 102 L.Ed.2d 835 (1989). The *Fields* court explained:

> Although police observations made when trespassing are usually improper, it is not the trespass itself which renders them unlawful. Instead, such observations generally violate Fourth Amendment rights simply because those observed cannot reasonably anticipate observation from vantage points obtained by trespassing. In such circumstances, society frequently respects as reasonable the expectation that such observations will not occur. The ultimate focus of Fourth Amendment analysis remains whether the defendant had a reasonable expectation of privacy in the place searched.

*United States v. Fields,* 113 F.3d at 322 (citation omitted). Here, the defendant could have easily shielded his activities from public view, but failed to take the simple and obvious steps necessary to do so. By conducting his drug transactions in

---

1. The undisputed evidence adduced at the hearing was that Officer Lucci positioned himself on a "cut," a worn path of travel, located not on the premises of 768 Avenue D, but on an adjacent property, at which all indications were that no one resided.

the doorway of the rear apartment at 768 Avenue D, in plain view of an area where others were free to come and go, the defendant failed to satisfy the subjective component of the standing test, that he had an expectation of privacy in the location at which he was observed by Officer Lucci.[2] In this regard, there can be no dispute that by standing in the doorway of the rear apartment at 768 Avenue D, the defendant was voluntarily exposing himself to public view. *United States v. Santana,* 427 U.S. 38, 44, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976); *United States v. Gori,* 230 F.3d 44, 51 (2d Cir.2000).

The second standing issue raised by the defendant relates to Officer Lucci's entry, without a warrant, into the rear apartment at 768 Avenue D. The defendant maintains that he has standing to contest the admissibility of items seized as a result of such warrantless entry.

At the outset, the Court disagrees with the Government's position that absent evidence that he had a legal right to be in the rear apartment at 768 Avenue D, the defendant cannot establish standing. The Government argues that, as a guest, the defendant was required to introduce proof that Monroe had actual authority to invite him into the rear apartment and that the absence of such proof is fatal to the standing question. However, it seems clear that the Supreme Court has abandoned such a *per se* rule. In *Rakas v. Illinois,* 439 U.S. 128, 147, 99 S.Ct. 421, 58 L.Ed.2d 387 (citation omitted), the Court stated:

> In abandoning "legitimately on premises" for the doctrine that we announce today, we are not forsaking a time-tested and workable rule, which has pro-

duced consistent results when applied, solely for the sake of fidelity to the values underlying the Fourth Amendment. Rather, we are rejecting blind adherence to a phrase which at most has superficial clarity and which conceals underneath that thin veneer all of the problems of line drawing which must be faced in any conscientious effort to apply the Fourth Amendment. Where the factual premises for a rule are so generally prevalent that little would be lost and much would be gained by abandoning case-by-case analysis, we have not hesitated to do so. But the phrase "legitimately on premises" has not been shown to be an easily applicable measure of Fourth Amendment rights so much as it has proved to be simply a label placed by the courts on results which have not been subjected to careful analysis. We would not wish to be understood as saying that legitimate presence on the premises is irrelevant to one's expectation of privacy, but it cannot be deemed controlling.

Additionally, the Government's position fails to address the concept of apparent authority recognized as consistent with the Fourth Amendment in the analogous context of consent searches. *Illinois v. Rodriguez,* 497 U.S. 177, 185, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990).

Nevertheless, although rejecting this *per se* rule advanced by the Government, the Court concludes that, on the facts of this case, that the defendant does not have standing to contest the warrantless entry into the rear apartment at 768 Avenue D. It is certainly correct, as the defendant points out, that the Supreme

---

**2.** Even if Officer Lucci had made his observations while standing in the yard of 768 Avenue D, the defendant would fail in his attempt to establish standing. This is so because 768 Avenue D consisted of two apartments, and thus the defendant should have reasonably

foreseen the presence of persons whom he did not invite onto to the premises, who would have been able to observe his activities in the doorway. *United States v. Fields,* 113 F.3d 313, 322 (2d Cir.1997).

Court in *Minnesota v. Olson*, 495 U.S. 91, 96–97, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990), held that overnight guests in the homes of third-persons can have a reasonable expectation of privacy in those premises. It is further true that in *United States v. Fields*, 113 F.3d at 321, the Second Circuit interpreted *Olson* as meaning that "any guest in appropriate circumstances may have a legitimate expectation of privacy when he is there with the permission of his host, who was willing to share his house and his privacy with his guest." However, the Supreme Court subsequently in *Minnesota v. Carter*, 525 U.S. 83, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998), qualified to some extent the holdings of both *Olson* and *Fields*. The Court held in *Carter* that in order to establish a reasonable expectation of privacy in a third-party's home, an individual must demonstrate he is a guest on the premises for a personal occasion, rather than for strictly a commercial purpose. In this case, the Court finds that the rear apartment of 768 Avenue D was a "gatehouse," a fortified location from which drugs were being sold, and thus essentially a commercial establishment, and that the defendant was on the premises on January 12, 2001, for a few hours solely for the purpose of selling drugs. Therefore, the Court concludes that he lacks standing. *See, United States v. Cooper*, 203 F.3d 1279, 1285, n. 3 (11th Cir.2000).

## B. Exigent Circumstances

Assuming, *arguendo*, that the defendant does have standing to contest the warrantless entry of Officer Lucci into the rear apartment at 768 Avenue D, the Court now considers whether exigent circumstances justified relief from the warrant requirement.

■ In this regard, the Supreme Court has repeatedly instructed that "it is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639, (1980). Therefore, in cases involving warrantless searches and seizures, the government bears the burden of proving that entry into a defendant's home was justified. *Coolidge v. New Hampshire*, 403 U.S. 443, 474–75, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). These same basic principles of Fourth Amendment law apply with equal force in the context of warrantless entries in the home made for purposes of arrest, even where there is independent probable cause for such an arrest. *Payton*, 445 U.S. at 588, 100 S.Ct. 1371. Before a police officer may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries. *Welsh v. Wisconsin*, 466 U.S. 740, 750, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984).

■ Although the Supreme Court has declined to define the scope of the "exigent circumstances" doctrine, two basic instances in which warrantless entry is justified are "hot pursuit" situations and when the destruction of evidence is imminent. *United States v. Santana*, 427 U.S. at 42–43, 96 S.Ct. 2406 (hot pursuit of fleeing felon); *Schmerber v. California*, 384 U.S. 757, 770–71, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (destruction of evidence). Also, entry may be justified if the life or person of a law-enforcement officer or other person is in imminent danger. *United States v. Dowell*, 724 F.2d 599, 602–03 (7th Cir.), cert. denied, 466 U.S. 906, 104 S.Ct. 1683, 80 L.Ed.2d 157 (1984); *United States v. Jackson*, 778 F.2d 933, 937 (2d Cir.1985); *United States v. Crespo*, 834 F.2d 267, 269 (2d Cir.1987).

In determining whether exigent circumstances exist, a district court should look to the totality of circumstances, and in that regard, the Second Circuit in *United States v. MacDonald,* 916 F.2d 766, 769–770 (2d Cir.1990) adopted a six factor test: (1) the nature of the crime; (2) whether the suspect is believed to be armed; (3) the probable cause linking the suspect to the crime; (4) the likelihood that the suspect will be found in the premises to be searched; (5) whether the suspect will escape; and (6) the peaceful circumstances of the entry. Recognizing that these factors are merely guidelines and no one factor is determinative, *United States v. Medina,* 944 F.2d 60, 68 (2d Cir.1991), the Court will proceed to consider them individually, based upon its findings of fact.

(1) The nature of the crime or crimes. Here the subject crimes were narcotics trafficking, where the suspected drugs were packaged in a way that would make them easily disposable, and possession of a handgun, which obviously created a potential for violence.

(2) Whether the suspect was believed to be armed. Here Officer Lucci saw the handle of a handgun in the defendant's waistband.

(3) The probable cause which linked the suspect to the crime. The law on probable cause is well settled. Probable cause to arrest exists where facts and circumstances within the officer's own knowledge, which the officer has received through reasonably trustworthy information, sufficiently warrants a man of reasonable caution to believe an offense has been or is being committed by the person to be arrested. *Dunaway v. New York,* 442 U.S. 200,

208, n. 9, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *United States v. Fisher,* 702 F.2d 372, 375 (2d Cir.1983). Probable cause is to be evaluated in light of the circumstances as they would have appeared to a prudent, cautious, trained law enforcement official. *United States v. Price,* 599 F.2d 494, 501 (2d Cir., 1979). Whether probable cause exists or not is primarily a factual question dependent upon the totality of circumstances. *United States v. Patrick* 899 F.2d 169, 171 (2d Cir.1990). Here, based upon Officer Lucci's observations, training and experience, and in consideration of the above-stated principles of law, there can be no question that he had probable cause to believe that the defendant had and was engaging in narcotics trafficking and additionally that he possessed a handgun.[3]

(4) The likelihood the suspect would be found in the premises to be searched. Here the likelihood was very high in light of the fact that Officer Lucci observed the defendant retreat into the rear apartment.

(5) Whether the suspect would escape. Here it was certainly reasonable for Officer Lucci to conclude that since he was alone, the defendant could escape unless he took immediate action.

(6) The peaceful circumstances of the entry. Here Officer Lucci used the minimum force required under the circumstances to pursue the defendant.

In analyzing these factors in combination, the Court concludes that Officer Lucci acted lawfully by entering the rear apartment of 768 Avenue D without a warrant, since he was in hot pursuit of the defendant, whom he had probable cause to

**3.** Pursuant to New York State Penal Law § 265.01(1), possession of a handgun is a crime.

believe was armed and engaging in narcotics trafficking, and who might destroy evidence of his crime, or escape, or pose a threat to others absent prompt action.[4]

## C. Admissibility of Items Seized

### 1) Lack of Standing

Based upon the Court's determination that the defendant lacks standing to contest the warrantless entry by Officer Lucci into the rear apartment of 768 Avenue D, the handgun, clip, ammunition, holster, and paper bag containing marihuana may properly be offered into evidence against the defendant. These items were recovered not from his person, but from locations in which he had no expectation of privacy.

■ The sum of U.S. currency recovered from the defendant's boot may properly be offered into evidence against him since it was seized pursuant to a search incident to a lawful arrest. *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *U.S. v. Perea*, 986 F.2d 633, 643 (2nd Cir.1993). Because the defendant had no expectation of privacy in the rear apartment at 768 Avenue D, his arrest within such location provides him no greater insulation than if he were apprehended in a public place.

### 2) Exigent Circumstances

■ Alternatively, if the defendant, upon appellate review, is found to have standing, then as indicated above, the Court concludes that exigent circumstances justified Officer Lucci's warrantless entry into the rear apartment of 768 Avenue D. That being the case, the handgun, magazine, ammunition, and holster, which were observed by Officer Lucci in plain view as he entered the premises to arrest the defendant, were properly seized as instrumentalities of a crime and accordingly may be offered into evidence. *Horton v. California*, 496 U.S. 128, 136–137, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); *United States v. Ochs*, 595 F.2d 1247, 1256 (2nd Cir.1979). Moreover, since Officer Lucci had lawfully entered the rear apartment without a warrant, the search of the defendant's person and seizure of the U.S. currency from his boot were proper pursuant to a lawful arrest. *Chimel v. California*, 395 U.S. at 763, 89 S.Ct. 2034; *U.S. v. Perea at 643*. Finally, having secured the defendant, Officer Lucci was authorized to conduct a quick and limited "security sweep" to ensure that no persons or objects on the premises posed a safety threat to him, and consequently his discovery of the brown paper bag containing marihuana in plain view, directly in front of the doorless bedroom closet, and the resulting seizure of the bag were lawful. *United States v. Kiyuyung*, 171 F.3d 78, 83 (2d Cir.1999).

## CONCLUSION

Accordingly, the application of the defendant to suppress tangible evidence is denied in its entirety.

IT IS SO ORDERED.

---

**4.** The relationship between drugs, guns, and violence is well documented in the decisional law of this Circuit. *United States v. Ceballos*, 654 F.2d 177, 184 (2d Cir.1981); *United States v. Vegas*, 27 F.3d 773, 778 (2d Cir.1994).