UNITED STATES of America,
Appellee,

v.

Josue BEDELL, Defendant–Appellant.

No. 06–3314–cr.

United States Court of Appeals,
Second Circuit.

Feb. 24, 2009.

Lara Treinis Gatz, Assistant United
States Attorney, for Benton J. Campbell,

United States Attorney for the Eastern District of New York, NY, for Appellee.

Kim P. Bonstrom, Bonstrom & Murphy, Shelter Island, NY, for Defendant–Appellant.

PRESENT: Hon. PETER W. HALL, Hon. DEBRA A. LIVINGSTON, Hon. JOHN R. GIBSON,* Circuit Judges.

### SUMMARY ORDER

Defendant–Appellant Josue Bedell appeals from a judgment entered on July 10, 2006 in the United States District Court for the Eastern District of New York (Spatt, J.), convicting him, following a plea of guilty, of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and sentencing him principally to 113 months of incarceration. We assume the parties' familiarity with the underlying facts, procedural history, and specification of the issues on appeal.

On appeal, Bedell argues that the district court erred in denying his motion to suppress the gun that officers seized in his room after arresting Bedell without a warrant in the common hallway of 83 Heston Road, the rooming house in which he resided.[1] Bedell's primary contention is that the officers' presence in the hallway and Bedell's arrest were unlawful, thus rendering the "plain view" and "search incident to arrest" exceptions to warrantless searches inapplicable. In addition, Bedell claims that even if the arrest were valid, the gun in his room fell outside the scope of the exception for a search incident to a valid arrest.

When reviewing a challenge to the denial of a motion to suppress, we review the factual findings of the district court for clear error. *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); *United States v. Waker*, 534 F.3d 168, 171 (2d Cir.2008) (quoting *United States v. Rommy*, 506 F.3d 108, 128 (2d Cir.2007)); *United States v. Irving*, 452 F.3d 110, 123 (2d Cir.2006). In this inquiry, we view the evidence in the light most favorable to the government. *United States v. Casado*, 303 F.3d 440, 443 (2d Cir.2002); *United States v. Khalil*, 214 F.3d 111, 122 (2d Cir.2000). We consider the district court's conclusions of law *de novo*. *Waker*, 534 F.3d at 171; *Irving*, 452 F.3d at 123.

■ In his primary argument that the gun should have been suppressed, Bedell places great emphasis on his contention that the police were "not lawfully present" or were "trespassing" in 83 Heston Road. Appellant's Br. at 27. But this is not the relevant inquiry. *See United States v. Cruz Pagan*, 537 F.2d 554, 558 (1st Cir. 1976); *see also United States v. Fields*, 113 F.3d 313, 322 (2d Cir.1997); *United States v. Eisler*, 567 F.2d 814, 816 (8th Cir.1978). Rather, "[t]he ultimate focus of Fourth Amendment analysis remains whether the defendant had a reasonable expectation of privacy" in the area into which police intruded. *Fields*, 113 F.3d at 322; *accord*

---

\* The Honorable John R. Gibson, United States Circuit Judge for the Eighth Circuit, sitting by designation.

1. This Court has jurisdiction to affirm the district court's suppression ruling on the merits, despite Bedell's failure to timely object, 28 U.S.C. § 636(b)(1); *see, e.g., Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir.1993), and notwithstanding the fact that his guilty plea did not comply with the conditional plea requirements of Federal Rule of Criminal Procedure 11(a)(2). *See United States v. Garcia*, 339

F.3d 116, 118 (2d Cir.2003). The government concedes that the parties intended for Bedell to preserve his right to appeal the district court's suppression ruling, Appellee's Br. at 25, and as the government points out, in the interests of justice this Court may excuse Bedell's failure to timely object. *See Roldan*, 984 F.2d at 89. Bedell's suppression motion also challenged the use of statements he made to police after his arrest; however, Bedell does not raise this issue on appeal.

*United States v. Haqq,* 278 F.3d 44, 47 (2d Cir.2002); *United States v. Granderson,* 182 F.Supp.2d 315, 322 (W.D.N.Y.2001); *see also Haqq,* 278 F.3d at 47 ("It has been clear for a generation that 'Fourth Amendment rights are personal rights ... [that] may not be vicariously asserted.'" (alteration in original) (quoting *Rakas v. Illinois,* 439 U.S. 128, 133–34, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978))).

According to the magistrate judge's report (which the district court accepted in total), 83 Heston Road was being used as a "multi-tenant rooming facility," in which "Bedell occup[ied] an upstairs room in exchange for rent." Appellant's App. at 53. Testimony from both the police and the owner of 83 Heston Road supports this factual finding, and we cannot say that it was clearly erroneous. *See, e.g., United States v. Snow,* 462 F.3d 55, 72–73 (2d Cir.2006); *Khalil,* 214 F.3d at 122. As the magistrate judge correctly noted, this finding in turn supports the conclusion that "Bedell had a legitimate expectation of privacy in his room." Appellant's App. at 54. However, these facts alone are not enough to demonstrate that Bedell had a reasonable expectation of privacy in the hallway.[2]

Where the defendant's ability to invoke Fourth Amendment rights is in doubt, the Supreme Court has made clear that the defendant "bears the burden of proving ... that he had a legitimate expectation of privacy in [the area intruded upon]." *Rawlings v. Kentucky,* 448 U.S. 98, 104, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980).

"[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." *Minnesota v. Carter,* 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998) (citing *Rakas,* 439 U.S. at 143–44 & n. 12, 99 S.Ct. 421); *see also Florida v. Riley,* 488 U.S. 445, 455, 109 S.Ct. 693, 102 L.Ed.2d 835 (1989) (O'Connor, J., concurring). This Circuit has repeatedly recognized this burden allocation in cases in which the nature of the defendant's privacy expectations is not clear. *See, e.g., United States v. Watson,* 404 F.3d 163, 166 (2d Cir.2005); *Haqq,* 278 F.3d at 47; *United States v. Osorio,* 949 F.2d 38, 40 (2d Cir.1991); *United States v. Pena Ontiveros,* 547 F.Supp.2d 323, 328–29 (S.D.N.Y.2008); *Granderson,* 182 F.Supp.2d at 320–21.

In the proceedings below, Bedell provided scant evidence to support the inference that he had a reasonable expectation of privacy in the common hallway at 83 Heston Road. He did not endeavor to show circumstances regarding his relationship with the other renters, their particular use of the common areas, or any other factor that might conceivably form the basis of a conclusion that the officers' presence in the common hallway of 83 Heston Road implicated Bedell's reasonable privacy expectations. *Cf. Reardon v. Wroan,* 811 F.2d 1025, 1027 n. 2 (7th Cir.1987) (reasonable expectation of privacy existed in hallways of fraternity house due to "exclusive living arrangement" and roommate-like relation-

---

**2.** It bears emphasizing that these facts are also insufficient to allow the *per se* conclusion that Bedell did *not* have a reasonable expectation of privacy in the hallway. Familiarity with suppression issues may lead a court instinctively to categorize cases as triggering Fourth Amendment presumptions for searches of a "home," *see, e.g., Payton v. New York,* 445 U.S. 573, 586–89, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), or the "common hall-

ways" of an apartment building, *see, e.g., United States v. Holland,* 755 F.2d 253, 255–56 (2d Cir.1985). The fact that a given location is a "rooming house" or a "multi-tenant dwelling," however, does not in itself dictate what reasonable expectations of privacy tenants have in common areas. Courts must instead undertake individualized inquiries into the facts of such cases.

ship between fraternity members). Only one witness testified on Bedell's behalf in the suppression hearing, and the testimony of that witness was not credited by the magistrate judge. We conclude that Bedell has failed to establish that he had a reasonable expectation of privacy in the common hallway that police entered in order to place him under arrest. In reaching this conclusion, we do not address whether or to what extent residents in other rooming-house situations may claim a reasonable expectation of privacy in their common hallways. *Cf. Riley*, 488 U.S. at 455, 109 S.Ct. 693 (O'Connor, J., concurring). We simply hold that, on the record before us, the defendant failed to prove a reasonable expectation of privacy in this case.

■ The other arguments Bedell makes to challenge the lawfulness of his arrest also do not justify disturbing the district court's ruling. We affirm the magistrate judge's conclusion that Bedell was validly arrested in the common hallway. Bedell invokes the issue, reserved in *United States v. Gori*, 230 F.3d 44, 52 n. 4 (2d Cir.2000), of whether a defendant loses the protection of *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), merely by opening his door in response to a knock by unidentified police officers. But that question is inapposite where, as here, the defendant not only opened his door but also stepped from his room into the hallway without any attempt to close his door or to remain in his room. Appellant's App. at 54. Construing these facts in the light most favorable to the government, *see Casado*, 303 F.3d at 443; *Khalil*, 214 F.3d at 122, we find Bedell's arrest clearly distinguishable from cases presenting the kind of police intimidation that might raise questions concerning the voluntariness of an arrestee's exit from a residence, *cf. Gori*, 230 F.3d at 51 n. 2 (discussing cases in which *Payton* violation was found where police caused inhabitants

to leave dwelling by, for example, "flood[ing] it with searchlights[ ] and order[ing] evacuation over a bullhorn" or "surround[ing] a residence with machine guns pointed at the windows" (internal quotation marks omitted)). The magistrate judge's findings support the inference that Bedell voluntarily exited his room and was thereafter lawfully arrested in the hallway.

■ Bedell's contention that the officers violated the knock and announce rule is equally without merit, even assuming (as the parties apparently do) that officers could violate this rule by making an arrest that involved no "breaking" into a home, forcibly or otherwise. *Cf. United States v. Alejandro*, 368 F.3d 130, 134–38 (2d Cir. 2004) (concluding that law enforcement's use of a ruse to gain entry to defendant's residence was not a "breaking" and was thus lawful under the federal knock-and-announce statute and the Fourth Amendment). Given what the officers knew of Bedell's criminal history and his recklessness with a firearm, the officers' objectively reasonable concern for their personal safety clearly justified their decision not to announce their presence, but merely to knock on Bedell's door. *See, e.g., Richards v. Wisconsin*, 520 U.S. 385, 394, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997) *United States v. Brown*, 52 F.3d 415, 421 (2d Cir.1995).

■ The final point made in Bedell's brief is that the "plain view" and "search incident to arrest" exceptions to the warrant requirement cannot be applied here because (1) Bedell's arrest was unlawful; (2) the officers' presence in the common hallway and their noncompliance with the knock and announce rule both violated the Fourth Amendment; and (3) in particular, the gun fell outside the scope of the search incident to arrest exception. Our conclusion that the officers validly arrested Be-

dell in the hallway undermines Bedell's first two contentions. Nor need we address Bedell's third argument. Assuming, *arguendo*, that the gun's seizure did not satisfy the search incident to arrest exception, it was clearly permissible under the plain view doctrine. Under this doctrine, "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *Minnesota v. Dickerson,* 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993) (citing *Horton v. California,* 496 U.S. 128, 136–37, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); *Texas v. Brown,* 460 U.S. 730, 739, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (plurality opinion)). In this case, after Bedell had been told he was under arrest, he announced his intention to retrieve his boots in his room. Under the circumstances, Detective Clark lawfully entered Bedell's room to retrieve Bedell's boots for him so that Bedell could be transported to the station. The gun was in open view,[3] lying between Bedell's boots, and the weapon's incriminating character was immediately apparent. Therefore, Bedell's gun was validly seized under the plain view doctrine.

Because Bedell's failure to demonstrate a reasonable expectation of privacy in the hallway sufficiently justifies our decision to affirm in this case, we decline to address the magistrate judge's reasoning with respect to whether exigent circumstances or apparent authority justified the officers' initial entry into 83 Heston Road. All arguments not otherwise discussed against affirming the district court's decision are without merit.

---

**3.** As the magistrate judge correctly concluded, Detective Clark's use of a flashlight in Bedell's dimly lit room did not constitute a violation of the Fourth Amendment. *See, e.g.,*

For the foregoing reasons, the judgment of the district court is hereby AFFIRMED.

*Brown,* 460 U.S. at 739–40, 103 S.Ct. 1535 (citing *United States v. Lee,* 274 U.S. 559, 563, 47 S.Ct. 746, 71 L.Ed. 1202 (1927)).