OPINION OF THE COURT
 

 Wesley, J.
 

 Defendant was convicted of forcibly stealing boots from a shopping mall security guard, who was designated by the
 
 *224
 
 indictment as the “owner” of the boots. The boots were taken from a nearby store unaffiliated with the mall that employed the guard. While the definition of an “owner” under the law and our jurisprudence is broad, it is not unlimited. We agree with the Appellate Division that the guard did not “own” the stolen boots, and we therefore affirm the reversal of the robbery and petit larceny convictions.
 

 Some time around 1:30 p.m. on January 4, 1995, a delivery truck pulled into Mr. Lee’s Men’s Shop on Jamaica Avenue in Queens with an order of Timberland boots. It appears that defendant and a confederate, Thomas Tyrone, were strolling down the avenue when they saw the truck and decided to upgrade their footwear. The two men surreptitiously removed a carton containing 12 pairs of boots. No one observed the theft. However, it was soon discovered that a container of boots was missing.
 

 Apparently realizing that carrying a carton full of stolen boots down the busy street might attract attention, defendant and Tyrone ducked into a loading dock at the nearby Gertz Mall, a shopping center located across the street from Mr. Lee’s, and then entered a public area of the mall. The two men were spotted by Frank Davis, a mall security guard. Davis knew that the two men were not authorized to be in the loading dock area, observed them carrying a box marked “Timberland,” and also knew that stores in the mall carried Timberland merchandise. Davis decided to stop them.
 

 When Davis confronted the pair, defendant claimed that the box belonged to them, although he was unable to produce a receipt. Meanwhile, Tyrone took a bag from a trash receptacle, and the two men began transferring the boots from the box to the bag.
 

 Davis radioed for assistance and attempted to stop the two men as they were leaving the mall. Defendant responded by displaying a box cutter and threatening Davis. Davis backed away and the two men ran from the mall. Davis and another security guard gave chase. As the guards closed in, defendant once again threatened them with the box cutter and then threw it away. Shortly thereafter, two police officers on routine patrol saw the chase, stopped the two men and placed them under arrest.
 

 Defendant was charged with first degree robbery, petit larceny, second degree menacing and additional related crimes. The robbery and petit larceny counts of the indictment both
 
 *225
 
 identified Davis, the mall security guard, as the owner of the boots. Following presentation of the People’s case at trial, and again at the close of all evidence, defendant moved to dismiss the robbery and larceny charges on the ground that since Davis was not the owner of the boots, the element of taking property from its “owner” had not been established. The trial court reserved decision on the motions and defendant was convicted on all counts. Defendant then renewed the motions, which were denied by the trial court in a written decision.
 

 The court held that the evidence demonstrated that the boots had been stolen, and “the jury was entitled to conclude that the defendant, as a thief, had absolutely no right of possession to the subject boots.” The court further concluded that, under the circumstances, “it was entirely reasonable for Mr. Davis to conclude that the carton of boots were stolen property.” In the court’s view, because Davis had a reasonable belief that the boots were stolen, he became a gratuitous bailee of the boots and thus acquired a right of possession greater than that of defendant.
 

 The Appellate Division modified the judgment, reversing only the robbery and petit larceny convictions and dismissing those counts of the indictment. The court held that the “People failed to establish that the alleged victim had a right of possession superior to that of the defendant and that the defendant ‘took’ such items from that person” (247 AD2d 643, 644). A Judge of this Court granted the People’s application for leave to appeal. We now affirm.
 

 Robbery and larceny require a taking of property “from an owner thereof’
 
 (see,
 
 Penal Law §§ 155.05, 160.00). The Penal Law defines ownership broadly, to include not only the true owner of a chattel, but “any person who has a right to possession thereof superior to that of the taker” (Penal Law § 155.00 [5]). The statutory definition codifies the common-law rule, long recognized in this State, that ownership is not limited to the title owner of the property (Penal Law § 155.00 [5];
 
 Phelps v People,
 
 72 NY 334, 357). Rather, it is enough that the person have a right to possession of the property superior to that of the thief. As we noted in
 
 Phelps,
 
 “[i]t is enough, if any one be named who has a special property in the thing stolen. A special property is a qualified or limited right, such as a bailee of it has”
 
 (id.,
 
 at 357;
 
 see also, Foulke v New York Consol. R. R. Co.,
 
 228 NY 269, 275). Thus, the definition of ownership does not require that the owner have “an independent right of possession but only that he [has] a possessory right which, however
 
 *226
 
 limited or contingent, [is] superior to that of defendant”
 
 (People v Hutchinson,
 
 56 NY2d 868, 869).
 

 The trial court reasoned that defendant, as a thief, had no ownership interest in the boots whatsoever, and therefore the security guard’s ownership interest must have been greater. This reasoning is flawed for it would all but eliminate the element of a taking of property “from an owner thereof.” The fact that a thief is not the legitimate owner of stolen property does not define the ownership rights of others. Certainly it does not create rights in others where none would otherwise exist. The scope of the guard’s ownership interest must be judged in terms of the guard’s right of possession vis-a-vis the world at large.
 
 *
 

 Relying on our decisions in
 
 Foulke
 
 and
 
 Phelps,
 
 the People contend that Davis was a gratuitous bailee and therefore did in fact have a superior possessory right to the boots. That reliance is misplaced.
 

 In
 
 Foulke,
 
 a passenger left a package behind when he exited a railway train. Another passenger picked up the package, and just after leaving the train, was stopped by a railway guard. The passenger indicated to the guard that he was going to keep the package and advertise for the owner. Another railway representative demanded that the passenger relinquish the package for safekeeping by the railroad for the owner. The passenger refused, a police officer was summoned, and the passenger was arrested for larceny. The passenger later sued for false arrest. This Court held that because the arrest was justified, the action was appropriately dismissed. The Court noted that the railway had a superior claim to possession of the package, explaining that:
 

 “After the passenger/owner had left the car, forgetting to take the package with him, the [other passenger] knew the package was not lost property. It
 
 *227
 
 or the custody of it did not belong to him then any more than it did while its owner was in the car. He saw and knew the owner had forgotten it, had left it by mistake. * * * It was the right of the [railroad] and
 
 its duty
 
 to become as to it and its owner a gratuitous bailee.
 
 It was its right and duty
 
 to possess and use the care of a gratuitous bailee for the safekeeping of the package until the owner should call for it”
 
 (Foulke v New York Consol. R. R. Co., supra,
 
 228 NY, at 274 [emphasis added]).
 

 It was the relationship between the owner, as passenger, and the railway, as common carrier, that gave rise to the latter’s duty to act as a gratuitous bailee of the property. The Court noted that a “[b] ailment does not necessarily and always,
 
 though generally,
 
 depend upon a contractual relation”
 
 (id.,
 
 at 275 [emphasis added]). The passenger/common carrier relationship was crucial to creation of the bailment, as it established the duty to act. Here, by contrast, there was no relationship between the true owner and the security guard which could have given rise to a duty on the guard’s behalf to become a bailee of the property. The security guard stood in the shoes of any other good Samaritan who may have wandered by and found the defendant carrying the boots. Unlike the railroad in
 
 Foulke,
 
 the security guard had no greater right to possess the boots than anyone else.
 

 In
 
 Phelps,
 
 the issue was whether the State could be deemed the owner of drafts that had been sent to the State Treasurer for payment of taxes from County Treasurers. The defendant argued that State law required that such payment be made by actual currency rather than through drafts, and thus the State was without authority to acquire any property interest in the drafts. This Court rejected the argument, holding that, regardless of whether the State was authorized to accept the drafts as payment, acceptance of the drafts by State officers created a voluntary bailment giving the State an interest in the drafts such that it was proper to allege in the indictment that the State was the owner
 
 (Phelps v People, supra,
 
 72 NY, at 357-358).
 

 Phelps
 
 points up another distinguishing feature of this case. While the People maintain that the guard was a bailee, he never had possession of the boots. In the absence of some form of delivery of the chattel to the bailee’s possession, no bailment is created
 
 (Phelps v People, supra,
 
 72 NY, at 357;
 
 see also, Osborn v Cline,
 
 263 NY 434, 437 [“One of the essential elements
 
 *228
 
 of a bailment is that the property be taken into the possession of the bailee”]). In
 
 Foulke
 
 the package was left on the train (i.e., delivered into the “custody and the potential actual possession” of the common carrier) prior to the intervention of Foulke
 
 (see, Foulke v New York Consol. R. R. Co., supra,
 
 228 NY, at 275). Here, in the absence of the guard’s actual possession of the boots
 
 (Phelps),
 
 or a special relationship giving rise to a custodial duty to act
 
 (Foulke),
 
 it is difficult to conceive how there could have been a “taking” from the guard as the robbery and larceny statutes require. Neither the fact that the boots were carried onto mall grounds, nor that the guard was charged with preserving mall property, gave him any sort of possessory right in the boots while they were in the possession of defendant and his partner.
 

 Our conclusion that the guard was not an owner of the boots is reached upon careful consideration of the proper scope of these offenses in the statutory scheme. Labeling the security guard an owner would expand the crime of robbery beyond the definitional limits imposed by the common law and the Legislature. Any person attempting to stop a person suspected of stealing property would have just as great a property interest in the stolen property as Davis did. If a criminal under those circumstances used force to resist the laudable efforts, he would be committing a second robbery. Such an interpretation defies both law and logic.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Levine, Cipabick and Rosenblatt concur.
 

 Order affirmed.
 

 *
 

 The trial court’s holding is also contrary to the well-settled common-law rule that a thief in possession of stolen goods has an ownership interest superior to the world at large, save one with a better claim to the property (see,
 
 People v Zinke,
 
 76 NY2d 8, 11, citing
 
 Ward v People,
 
 6 Hill 144; see
 
 also, Anderson v Gouldberg,
 
 51 Minn 294, 296, 53 NW 636, 637 [1892] [a possessor of logs acquired by trespass had a right to them “against all the world except those having a better title.”];
 
 Odd Fellows’ Hall Assn. v McAllister,
 
 153 Mass 292, 295, 26 NE 862, 863 [Holmes, J.] [1891] [“Whatever may have been the old law * * * at the present day one who has possession of goods is entitled to keep them as against any one not having a better title”]). Were it otherwise, one who stole property from a thief could not be held criminally liable for the taking
 
 (see generally,
 
 Annotation,
 
 Stolen Money or Property as Subject of Larceny or Robbery,
 
 89 ALR2d 1435).