to grant that relief."). Moreover, County has not suffered any damage from GM's actions since Lance's proposed relocation never occurred.

### III.

 When a case becomes moot on appeal, we vacate the district court's ruling and remand the case for a dismissal. *See Nat'l R.R. Passenger Corp. v. Int'l Ass'n of Machinists & Aerospace Workers*, 915 F.2d 43, 48 (1st Cir.1990). Because we find that County's request for injunctive relief is no longer live, the judgment below is **vacated**, and the case is **remanded** with direction to dismiss the complaint as moot.

**UNITED STATES of America,
Appellant,**

v.

**Samad HAQQ, Defendant–Appellee.**

No. 01–1029.

United States Court of Appeals,
Second Circuit.

Argued: Sept. 17, 2001

Decided: Jan. 17, 2002

William F. Johnson, Assistant United States Attorney (Christine H. Chung, Assistant United States Attorney, of counsel; Mary Jo White, United States Attorney, on the brief), United States Attorney's Office for the Southern District of New York, New York, NY, for Appellant.

Steven M. Statsinger, The Legal Aid Society, Federal Defender Division, Appeals Bureau, New York, NY, for Defendant–Appellee.

Before: MESKILL, JACOBS, and CABRANES, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge.

The Government appeals from an Order of the United States District Court for the Southern District of New York (Naomi Reice Buchwald, Judge) granting defendant's motion to suppress evidence seized when a police officer, after lawfully entering the defendant's home to execute several arrest warrants and lawfully engaging in a protective sweep of the premises, conducted a warrantless search of a suitcase inside defendant's home. The District Court, in a ruling from the bench relying on *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), held that the search violated defendant's reasonable expectation of privacy in his home.

We vacate the suppression order and remand the cause to the District Court for consideration of the issue of defendant's expectation of privacy in the suitcase.

## I. BACKGROUND

In February 2000, defendant-appellant Samad Haqq lived in a two-bedroom apartment in New York City rented by his fiancée, Francine Harris. It is undisputed that at least four people lived in that apartment: Haqq, Francine Harris, Cedric Harris (Francine Harris's six-year-old son), and Reginald Peavy, a friend of Francine Harris's who paid her $75 per week and slept in one of the bedrooms. According to Haqq, another unrelated man, Samuel Myers, also lived in the apartment and slept in the living room.

On the morning of February 9, 2000, New York City police officers, including Detective Ralph Hanna, went to the Harris apartment to arrest Haqq, who was the subject of several outstanding arrest warrants. When they arrived at Harris's apartment, the officers knocked on the door and identified themselves. For five to ten minutes, there was no response; thereafter, Myers opened the door. The officers immediately handcuffed both Myers and Haqq. Leaving Haqq and Myers under guard in the living room, Hanna and another officer conducted a protective sweep of the apartment to ensure that no one else was on the premises.

As part of the protective sweep, Hanna entered the back bedroom of the apartment, where he observed a black nylon suitcase on top of the bed in the center of the room. Hanna searched the suitcase and discovered three handguns.

After seizing the guns, the officers took Haqq to a nearby police station, where Haqq signed a written statement in which he admitted that he had bought the guns

to repay a debt to a drug dealer who wanted some "throwaway" weapons. The police then obtained Haqq's consent to a further search of the apartment, where they found two additional handguns and ammunition.

Haqq was subsequently charged in a two-count indictment with possessing firearms after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1),[1] and possessing a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k).[2] Haqq moved to suppress the firearms seized from his apartment and his confession, contending that the initial search of the suitcase was unlawful and that the confession and subsequent search were fruits of the proverbial "poisonous tree." The Government conceded that, if the initial search of the suitcase were unlawful, then the confession and subsequent search would be subject to suppression, but it argued that the initial search had not violated Haqq's Fourth Amendment rights for two independent reasons: because the guns were in plain view, and because Haqq had no reasonable expectation of privacy in the suitcase.

The District Court held evidentiary hearings on the suppression motion on September 19, November 6, and November 21, 2000. At those hearings, Hanna testified that, when he entered the back bedroom, he saw the outline of a handgun

through the suitcase, and that he touched the outline, felt a gun, and then opened the pouch to discover three handguns. He also testified that the main compartment of the suitcase contained shoes, which filled "most" of the suitcase.

Despite being given several opportunities in open court to recreate the condition in which the suitcase was found, the Government was unable to repack the suitcase in such a way as to make the outline of a gun visible in the way described by Hanna, except by overstuffing the suitcase with numerous boxes. The District Court found the demonstration involving boxes unconvincing, noting that "no one claims [boxes] were ever actually in the suitcase[, and, w]hen packed with any number of shoes, the protrusion from the suitcase is not recognizable as a gun." Hr'g Tr. dated Dec. 18, 2000, at 10.

With respect to Haqq's expectation of privacy in the suitcase, the testimony at the hearing revealed that the suitcase belonged to Peavy, not Haqq, and that the bedroom in which Hanna found the suitcase was the one in which Peavy slept. The room was also occasionally slept in by Cedric Harris, and Francine Harris would sometimes care for Cedric in the room.

None of the contents of the suitcase at the time it was searched belonged to Peavy; the shoes belonged to Haqq,

---

1. Title 18, section 922(g) of the United States Code provides, in relevant part:

   It shall be unlawful for any person—
   (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
   . . .
   to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

2. Title 18, section 922(k) of the United States Code provides:

   It shall be unlawful for any person knowingly to transport, ship, or receive, in interstate or foreign commerce, any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered or to possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce.

Myers, and Myers's sister. Haqq had used the suitcase during a trip to the Carolinas with Myers, and Myers had placed it in Peavy's room upon their return earlier on the very morning of the execution of the arrest warrants by the police, February 9, 2000.

Haqq and Peavy gave conflicting testimony regarding whether Haqq had Peavy's permission to use the suitcase. According to Haqq, Peavy had given him permission to use the suitcase for the Carolina trip, and, in any event, they had an understanding that permitted each of them to use the other's belongings. Peavy denied ever giving Haqq permission to use the suitcase and also denied the existence of any understanding with Haqq regarding use of belongings.

The District Court granted the motion to suppress. Relying on *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), it held that Haqq's reasonable expectation of privacy in his home was "sufficient to permit him to object to the seizures of objects which were not, in fact, in plain view." Hr'g Tr. dated Dec. 18, 2000, at 6. Because it based its decision on Haqq's reasonable expectation of privacy in his home, the District Court concluded that it was unnecessary to resolve the factual dispute over Haqq's property interest in the suitcase itself:

> Even assuming *arguendo* that the defendant lacked a specific property interest in the container within his home preventing the object inside from being viewed, he had a reasonable expectation of privacy to object to an allegedly unlawful search of his home.

*Id.* at 6–7. The District Court then found, as a factual matter, that the guns had not been in plain view.

On appeal, the Government challenges only the finding that Haqq's reasonable expectation of privacy in his home was violated by the search of the suitcase. It argues that Haqq's Fourth Amendment rights were not violated unless he had a reasonable expectation of privacy in the suitcase, and that he could have no such expectation because he did not own it and, even if he had permission to borrow it, he had returned it to Peavy by putting it on Peavy's bed in the room that Peavy was renting.

## II. Discussion

■ It has been clear for a generation that "Fourth Amendment rights are personal rights ... [that] may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133–34, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Accordingly, a defendant's Fourth Amendment rights are violated "only when the challenged conduct invaded *his* legitimate expectation of privacy rather than that of a third party." *United States v. Payner*, 447 U.S. 727, 731, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980) (emphasis in original). The cornerstone of the modern law of searches is the principle that, to mount a successful Fourth Amendment challenge, "a defendant must demonstrate that he personally has *an expectation of privacy in the place searched.*" *Minnesota v. Carter*, 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998) (emphasis added); *see also United States v. Fields*, 113 F.3d 313, 322 (2d Cir.1997) ("The ultimate focus of Fourth Amendment analysis remains whether the defendant had a reasonable expectation of privacy in the place searched."). A defendant must also show "that his expectation [of privacy] is reasonable, *i.e.* one that has a 'source outside the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.'" *Carter*, 525 U.S. at 88, 119 S.Ct. 469 (quoting *Rakas*, 439 U.S. at 143 n. 12, 99 S.Ct. 421).

In this case, the District Court held that search of the suitcase violated Haqq's reasonable expectation of privacy in his home. Thus, the District Court, in essence, treated the search of the suitcase *in* Haqq's home as part of a search *of* his home. The District Court found support for its conclusion in *Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). We conclude, however, that the District Court misapprehended the holding of *Hicks.*

The facts of *Hicks* are as follows: After a bullet was fired through the floor of the defendant's apartment into the apartment below, police officers entered defendant's apartment (without a warrant) to search for the shooter, for other victims, and for weapons. 480 U.S. at 323, 107 S.Ct. 1149. One of the officers noticed that the apartment contained expensive stereo equipment, which "seemed out of place." *Id.* Suspecting the equipment was stolen, he moved some of the stereo components so that he could observe and record their serial numbers. *Id.* The stereo equipment was, in fact, stolen in an armed robbery, and the defendant was subsequently indicted for the robbery. *Id.* at 323–24, 107 S.Ct. 1149. After the defendant successfully moved in State court to suppress the stereo equipment on the grounds that the officer's actions violated his rights under the Fourth Amendment to the United States Constitution,[3] the State appealed to the United States Supreme Court, contending, *inter alia,* that the officer's actions with respect to the stereo equipment constituted neither a search nor a seizure within the meaning of the Amendment. *Id.* at 324, 107 S.Ct. 1149.

In the portion of *Hicks* most relevant to the issues presented in this case, the Supreme Court rejected that argument. In the Court's words,

Officer Nelson's moving of the equipment, however, did constitute a "search" separate and apart from the search for the shooter, victims, and weapons that was the lawful objective of his entry into the apartment. Merely inspecting those parts of the turntable that came into view during the latter search would not have constituted *an independent search,* because it would have produced no additional invasion of respondent's privacy interest. *See Illinois v. Andreas,* 463 U.S. 765, 771, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983). But taking action, *unrelated to the objectives of the authorized intrusion,* which exposed to view concealed portions of the apartment or its contents, did produce *a new invasion of respondent's privacy* unjustified by the exigent circumstance that validated the entry. . . . It matters not that the search uncovered nothing of any great personal value to respondent—serial numbers rather than (what might conceivably have been hidden behind or under the equipment) letters or photographs. A search is a search, even if it happens to disclose nothing but the bottom of a turntable.

*Id.* at 324–25, 107 S.Ct. 1149 (emphasis added). Because the search of the turntable had not been supported by probable cause, the Court held that the search had violated the defendant's Fourth Amendment rights. *Id.* at 326–29, 107 S.Ct. 1149.

All of the concurring and dissenting opinions in *Hicks* reflect an understanding

---

**3.** "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const Amend. IV

that the search at issue in that case was a search *of the stereo equipment*—and not of Hicks's home. *See Hicks,* 480 U.S. at 330, 107 S.Ct. 1149 (White, J., concurring) ("The police officers conducted a search *of respondent's stereo equipment* absent probable cause that the equipment was stolen." (emphasis added)); *id.* at 332, 107 S.Ct. 1149 (Powell, J., dissenting) ("The Court holds that there was an unlawful search *of the turntable.*" (emphasis added)); *id.* at 333, 107 S.Ct. 1149 (O'Connor, J., dissenting) ("The Court asks whether the police must have probable cause before ... conducting a full-blown search *of [an] object [in plain view],* and concludes that they must." (emphasis added)). In a few subsequent decisions, the Supreme Court has similarly described *Hicks* as a case about the search or seizure of "an object," rather than about an impermissibly broad search of a home. *See, e.g., Minnesota v. Dickerson,* 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); *Soldal v. Cook County,* 506 U.S. 56, 66, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992). *But cf. Kyllo v. United States,* 533 U.S. 27, ——, 121 S.Ct. 2038, 2045, 150 L.Ed.2d 94 (2001) ("[I]n *Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), the only thing detected by a physical search that went beyond what officers lawfully present could observe in 'plain view' was the registration number of a phonograph turntable.

[This was an] intimate detail[ ] because [it was a] detail[ ] of the home....". As a result, we read *Hicks* to hold that the search of the stereo equipment—and not the search of the defendant's home (which was prompted and otherwise justified by exigent circumstances)—violated the defendant's Fourth Amendment rights.

In the instant case, however, the District Court read *Hicks* differently. In the District Court's view, *Hicks* supports the broad proposition that a defendant's "reasonable expectation of privacy in his home [is] sufficient to permit him to object to the seizure of objects [within the home] which [are] not in fact in plain view."[4] Hr'g Tr. dated Dec. 18, 2000, at 6. The District Court's interpretation of *Hicks* is apparently based on the assumption that because the stereo equipment in that case was stolen, the defendant could not have had a reasonable expectation of privacy in it. In the District Court's view, *Hicks* teaches that "even where property is in fact stolen, a defendant may object to a constitutionally impermissible search within his home *despite the absence of an ownership or possessory interest in the item itself.*" *Id.* (emphasis added). We disagree.

If *Hicks* were read to mean, in the context of a single dwelling shared by several unrelated individuals, that each auto-

---

4. According to the transcript of the hearing, the District Court purportedly referred to "an allegedly unlawful search *of* [Haqq's] home," Hr'g Tr. dated Dec. 18, 2000, at 7 (emphasis added). But the logic of the opinion suggests that the reference should have been to "an allegedly unlawful search" *in* Haqq's home. Nothing in the record suggests that the search *of the home* was unlawful; other than Hanna's search of the suitcase, the *only* search of the home or any of its contents was a protective sweep for other persons or weapons, a search that Haqq conceded at the hearing was justified under the circumstances. The search of the suitcase was not part of an

unjustified warrantless search of a home or even of numerous containers within a home. *Cf. Alderman v. United States,* 394 U.S. 165, 176–77, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969) ("If the police make an *unwarranted* search of a house and seize tangible property belonging to third parties ... the homeowner may object to its use against him, not because he had any interest in the seized items as 'effects' protected by the Fourth Amendment, but because they were the fruits of an unauthorized search of his house, which is itself expressly protected by the Fourth Amendment." (emphasis added)) (pre-*Katz* opinion).

matically has a reasonable expectation of privacy in the whole dwelling, so that each person's reasonable expectation of privacy is violated when there is an impermissible search of an object in the dwelling (but not the dwelling itself), regardless of who owns the object or possesses it, or in whose room or space it is located, then *Hicks* would have created an exception, *sub silentio*, to the rule first applied twenty years earlier in *Katz v. United States*, 389 U.S. 347, 353, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), that "capacity to claim the protection of the Fourth Amendment depends ... upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy *in the invaded place.*" *Rakas*, 439 U.S. at 143, 99 S.Ct. 421 (interpreting *Katz* ). But neither *Rakas* nor any other case applying this rule has suggested that it might not apply to a search of an object in the home. To the contrary, when considering the legality of a search of an object within a home, courts have properly focused on the defendant's expectation of privacy in *the object* apart from his expectation of privacy in the home. *See, e.g., United States v. Gonzalez*, 940 F.2d 1413, 1420 n. 7 (11th Cir.1991) (homeowner lacked a reasonable expectation of privacy in a briefcase in the possession of a casual visitor to his home); *United States v. Garcia–Rosa*, 876 F.2d 209, 219–20 (1st Cir.1989) (homeowner lacked a reasonable expectation of privacy in a box located in his wife's dresser where he claimed no interest in the box or its contents); *see also* 3 WAYNE R. LaFAVE ET AL., CRIMINAL PROCEDURE § 9.1(b) n. 44 (1999) ("A person in possession of premises has standing with regard to a search of those premises and also a seizure of objects therein, and thus may have suppressed the fruits of either type of intrusion if found illegal, but does not also have standing as to the *search* of a container belonging to another in the premises."

(emphasis in original)). Similarly, courts have held that one who shares his home with another does not have a reasonable expectation of privacy in those areas of the home used exclusively by his roommate. *See, e.g., Lenz v. Winburn*, 51 F.3d 1540, 1549–50 (11th Cir.1995) (grandparents lacked reasonable expectation of privacy in closet in their home used exclusively by granddaughter); *People v. Fleming*, 36 Ill. App.3d 612, 345 N.E.2d 10, 14–15 (1975) (where defendant and his brother shared an apartment and brother kept his bedroom locked and kept key in his possession, defendant had no reasonable expectation of privacy in the brother's bedroom).

We conclude that *Hicks* was not a departure from the Supreme Court's earlier Fourth Amendment jurisprudence. Accordingly, because the Supreme Court in *Hicks* held that the search of the stereo equipment was unlawful, it necessarily also found, contrary to the District Court's assumption, that the defendant had a legitimate expectation of privacy in that equipment, despite its having been stolen. *See Rakas*, 439 U.S. at 140, 99 S.Ct. 421 (holding that the question of whether a defendant's legitimate expectation of privacy was violated is part and parcel of a Fourth Amendment inquiry).

█ Such a conclusion is not as anomalous as suggested by the District Court. Although a thief certainly has no "ownership" interest in a stolen item, the law recognizes his "possessory" interest: "the well-settled common-law rule [is] that a thief in possession of stolen goods has an ownership interest superior to the world at large, save one with a better claim to the property." *See People v. Wilson*, 93 N.Y.2d 222, 226 n. *, 689 N.Y.S.2d 419, 422 n. *, 711 N.E.2d 633, 635 n. * (1999); *see also Virgin Islands v. Edwards*, 903 F.2d 267, 273 (3d Cir.1990) ("It has long been a principle of common law that one in pos-

session of property has the right to keep it against all but those with a better title."); *Anderson v. Gouldberg*, 51 Minn. 294, 53 N.W. 636, 636 (1892) (holding that a thief may maintain a replevin action against a third party that deprived him of the stolen goods). While this possessory interest is insufficient, standing alone, to create a reasonable expectation of privacy in a stolen car in a driveway or on a commercial property, *see United States v. Tropiano*, 50 F.3d 157, 161 (2d Cir.1995), when stolen property is kept *inside a home* it may not be searched without a warrant absent probable cause. *See Hicks*, 480 U.S. at 326–29, 107 S.Ct. 1149; *see also id.* at 324–25, 107 S.Ct. 1149 (referring to Hicks's "possessory interest" in the stolen stereo equipment); *cf. Kyllo v. United States*, 533 U.S. 27, ——, 121 S.Ct. 2038, 2045, 150 L.Ed.2d 94 (2001) ("[I]n *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), the only thing detected by a physical search that went beyond what officers lawfully present could observe in 'plain view' was the registration number of a [stolen] phonograph turntable. [This was an] intimate detail[ ] because [it was a] detail[ ] of the home . . . .").

It does not necessarily follow from the finding of a legitimate expectation of privacy in the stereo equipment in *Hicks*, however, that the defendant here had a legitimate expectation of privacy in the suitcase. In *Hicks*, there was no question about who had custody and control of the stereo equipment—Hicks was apparently the sole resident of the apartment in which the equipment was found, and the apartment was unoccupied when police entered. *See State v. Hicks*, 146 Ariz. 533, 707 P.2d 331, 332 (1985). Thus, the Supreme Court's holding that the defendant in *Hicks* had a reasonable expectation of privacy in the stereo equipment reflects a conclusion that exclusive custody and control of an item within one's home is sufficient to establish

a reasonable expectation of privacy in that item. *See Hicks*, 480 U.S. at 324–25, 107 S.Ct. 1149 (holding that the movement of the stereo equipment "did not 'meaningfully interfere' with respondent's *possessory interest* in . . . the equipment," but "did produce *a new invasion of respondent's privacy*" (emphasis added)). Here, in contrast, the Government contends that Haqq relinquished custody and control of Peavy's suitcase when he returned it to Peavy's room following the trip to the Carolinas.

■ Resolution of this issue—which the District Court elided—as well as any other matter bearing on the determination of whether Haqq had a reasonable expectation of privacy in the suitcase (such as those discussed by Judge Meskill, *post*, at [443–45] ), should be made, in the first instance, by the District Court. *See United States v. Ali*, 68 F.3d 1468, 1473 (2d Cir.1995). Nothing in this opinion should be read to suggest a view as to whether any expectation of privacy in the suitcase on the part of Haqq was reasonable.

### III. CONCLUSION

In sum, we hold that the District Court erred in holding Haqq's Fourth Amendment rights were violated by a police officer's search of a suitcase in his home following the officer's lawful entry into the home and into the bedroom where the suitcase was located without finding that the defendant had a reasonable expectation of privacy in the suitcase. Accordingly, we vacate the December 18, 2000, Order of the District Court granting Haqq's motion to suppress, and remand the cause for further proceedings consistent with this opinion, including consideration of whether Haqq had a reasonable expectation of privacy in the suitcase.

MESKILL, Judge, concurring:

I concur in the result because I agree that the district court was required to address Haqq's expectation of privacy in the suitcase itself and failed to do so. I write separately to express my strong opinion regarding the presumption of privacy that should attach to every item not within plain view within a person's home. I am troubled by our decision's potential to facilitate government intrusion into what we think of as private space. In my opinion, if a defendant is not verbally or physically barred by his co-residents from accessing certain places or items within his home, that fact should weigh heavily in the defendant's favor when determining whether he enjoys a reasonable expectation of privacy in those places or items.

As a general *policy*, I would support a presumption that a resident has a reasonable expectation of privacy in all things within his home not within plain view. It is well settled that the question of whether a defendant has "standing" to bring a Fourth Amendment challenge is more properly subsumed under the substantive analysis of whether the defendant's Fourth Amendment rights were violated. *Rakas v. Illinois*, 439 U.S. 128, 139–40, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Whether a defendant's Fourth Amendment rights were violated, in turn, depends on whether the defendant enjoyed a legitimate expectation of privacy in the place or thing searched. *Id.* at 143, 99 S.Ct. 421. But if, in the interest of obtaining evidence, the police were allowed to proceed without any presumption that the resident of a home enjoys an expectation of privacy in everything in that home not within plain view, one of two consequences may follow, either of which is undesirable.

First, the lack of a presumption could necessitate a probing inquiry by the police every time they attempt to perform a valid search that is not bound by the constraints of a warrant. The police would be required to ask a series of questions about every object they wished to search, including: "Is this yours?" or "If this is not yours, are you using it with the permission of the owner?" or "Do you have a right to exclude others from this container?" This is just the sort of situation, "qualified by all sorts of ifs, ands, and buts and requiring the drawing of subtle nuances and hairline distinctions" that the Supreme Court has cautioned against. *New York v. Belton*, 453 U.S. 454, 458, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) (quotation marks omitted).

Alternatively, the police could be permitted to search every object in a home for contraband or evidence of crimes without any presumption that the resident of the home expects those objects to remain free from government intrusion. This would exact an enormous cost on the privacy and sanctity of citizens' homes while offering little promise of any resulting benefit to law enforcement because it is more likely than not that the citizens would have an expectation of privacy in all of the things within their home that are searched. While it is true that a defendant must assert a legitimate expectation of privacy in the item searched, it is also true that, "in the case of the search of the interior of homes ... there is a ready criterion, with roots deep in the common law, of the minimal expectation of privacy that *exists*, and that is acknowledged to be *reasonable*." *Kyllo v. United States*, 533 U.S. 27, ——, 121 S.Ct. 2038, 2043, 150 L.Ed.2d 94 (2001). Employing a presumption of privacy as a policy would serve to restrain police exuberance and minimize the resulting expense of judicial resources and intrusion on citizens' comfort in their residences.

"[T]he [Supreme] Court has long spoken of the Fourth Amendment's strictures as restraints imposed upon 'governmental action'—that is, 'upon the activities of sovereign authority.'" *New Jersey v. T.L.O.,* 469 U.S. 325, 335, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) (quoting *Burdeau v. McDowell,* 256 U.S. 465, 475, 41 S.Ct. 574, 65 L.Ed. 1048 (1921)). The ultimate question in the Fourth Amendment calculus is whether one's claim to privacy from government intrusion "is reasonable; *i.e.,* one that has 'a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.'" *Minnesota v. Carter,* 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998) (quoting *Rakas,* 439 U.S. at 143 n. 12, 99 S.Ct. 421). I believe that because the suitcase was in his home, Haqq can show a reasonable expectation of privacy under either formula.

Haqq was a resident of the apartment in which the suitcase was located. He had used the suitcase for the prior two weeks. He left his possessions in the suitcase and directed that the suitcase be placed in Peavy's bedroom, indicating a strong claim to a possessory interest if the district court were to evaluate the issue of Haqq's expectation of privacy with reference to personal property law. *See Rakas,* 439 U.S. at 149, 99 S.Ct. 421 (explaining the Court's holding in *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), by stating that "[e]xcept with respect to his friend, Jones had complete dominion and control over the apartment and could exclude others from it"); *see also infra* Section II ("[T]he Supreme Court's holding that the defendant in [*Arizona* v.] *Hicks* [, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987),] had a reasonable expectation of privacy in the stereo equipment reflects a conclusion that exclusive custody and control of an item within one's home is

sufficient to establish a reasonable expectation of privacy in that item.").

In addition, Haqq directed Myers to hide the guns. Myers hid the guns in a suitcase he and Haqq had used for two weeks that was located—at Haqq's request—in a bedroom of the apartment in which Haqq lived and was present at the time of the search. If the district court were to evaluate the reasonableness of Haqq's privacy expectation with respect to "'understandings that are recognized and permitted by society,'" *Carter,* 525 U.S. at 88, 119 S.Ct. 469 (quoting *Rakas,* 439 U.S. at 143 n. 12, 99 S.Ct. 421), it appears that his expectation was entirely reasonable unless the district court finds that Peavy forbade Haqq to use Peavy's suitcase.

Given the longstanding acceptance of a legitimate and recognized expectation of privacy in the interior of the home, there is, it seems to me, a marked difference between the police encountering a suitcase on the street and seeing the same suitcase in a bedroom within someone's home—even a shared home. The police's legitimate presence in Haqq's residence and their legitimate right to perform a protective sweep of the premises did not suddenly transform for Fourth Amendment purposes the interior of the apartment into a public plaza. "To be arrested in the home involves not only the invasion attendant to all arrests but also an *invasion of the sanctity of the home.*" *United States v. Reed,* 572 F.2d 412, 423 (2d Cir.1978) (emphasis added). A resident's heightened expectation of privacy begins at the threshold of his door and should not disappear simply because the police legitimately have crossed that threshold. *See Payton v. New York,* 445 U.S. 573, 589, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) ("In none [of the settings protected by the Fourth Amendment] is the zone of privacy more

clearly defined than when bounded by the unambiguous physical dimensions of an individual's home.").

The protection of the Fourth Amendment, by necessity, exists in degrees. While we are protected from unreasonable government intervention in our businesses, automobiles and in public, the protection we enjoy in these situations is far less than the ultimate protection we receive in our homes. *Compare Dow Chem. Co. v. United States*, 476 U.S. 227, 237 n. 4, 106 S.Ct. 1819, 90 L.Ed.2d 226 (1986) (viewing a large industrial plant with sophisticated camera equipment from an airplane held valid because "this is *not* an area immediately adjacent to a private home, where privacy expectations are most heightened"), *with Kyllo*, 533 U.S. at ——, 121 S.Ct. at 2046 (using heat sensing equipment not generally available to the public to determine the relative heat emanating from sections of a home found illegal due to the " 'firm line [drawn] at the entrance to the house' " (quoting *Payton*, 445 U.S. at 590, 100 S.Ct. 1371)).

Accordingly, I believe that when considering the reasonableness of Haqq's expectation of privacy in the suitcase the district court should give great weight to the suitcase's location within the "unambiguous physical dimensions of [his] home." *Payton*, 445 U.S. at 589, 100 S.Ct. 1371.

In my opinion, on this record the district court would not err if it found that Haqq had a reasonable expectation of privacy in the suitcase.